RICHARD R. KEENE, PLAINTIFF IN ERROR *vs.* MARGARET MEADE, EXECUTRIX OF RICHARD W. MEADE, DECEASED, DEFENDANT IN ERROR.

A commission was issued in the name of Richard *M.* Meade, the name of the defendant being Richard *W.* Meade. This is a clerical error in making out the commission, and does not affect the execution of the commission. [6]

It may well be questioned whether the middle letter of a name forms any part of the christian name of a party. It is said the law knows only of one christian name, and there are adjudged cases strongly countenancing, if not fully establishing, that the entire omission of a middle letter is not a misnomer or variance. [7]

A witness, the clerk of the plaintiff, examined under a commission, stated the payment of a sum of money to have been made by him to the defendant, and that the defendant at his request made an entry in the plaintiff's rough cash book, writing his name at full length, and stating the sum paid to him, not so much for the sake of the receipt, as in order for him, the witness, to become acquainted with his signature, and the way of spelling his name. It is not necessary to produce the book in which the entry was made, and parol evidence of the payment of the money is legal. It cannot be laid down as a universal rule, that where written evidence of a fact exists, all parol evidence of the same fact is excluded. [7]

It is not known that there is any practice in the execution or return of a commission, requiring a certificate, in whose hand writing the depositions returned with the commission were taken down. All that the commission requires is,

[Keene *vs.* Meade.]

that the commissioners, having reduced the depositions taken by them to writing, should send them with the commission under their hands and seals to the judges of the court out of which the commission issued. But it is immaterial in whose hand writing the depositions are; and it cannot be required that they should certify any immaterial fact. [8]

A certificate by the commissioners, that A. B. whom they were going to employ as a clerk had been sworn, admits of no other reasonable interpretation than that A. B. was the person appointed by them as clerk. [9]

It is not necessary to return with the commission the form of the oath administered by the commissioners to the witnesses. When the commissioners certify, the witnesses were sworn, and the interrogatories annexed to the commission were all put to them, it is presumed that they were sworn and examined as to all their knowledge of the facts. [10]

ERROR to the circuit court for the county of Washington in the district of Columbia.

In the circuit court the testator of the defendant in error Richard W. Meade, instituted an action against Richard R. Keene, the plaintiff in error, for money lent and advanced to him in Spain, where Mr Meade, at the time of the loan, resided, and carried on business as a merchant. In order to establish the claims of the plaintiff below, a commission was issued to Cadiz; and under the same, certain depositions were taken, which were returned with the commission. The commission was directed to the commissioners in a case stated to be depending in the court in which Richard *M.* Meade was plaintiff, and Richard R. Keene defendant; and it was returned to the court under the hands and seals of the commissioners, who certified that the " execution of the commission appears in a certain schedule annexed."

In the schedule annexed to the commission was also the following certificate under the hands of the commissioners.

" We the undersigned, appointed commissioners to examine evidences in a cause depending in the circuit court of the county of Washington in the district of Columbia; between Richard W. Meade plaintiff, and Richard R. Keene defendant, do hereby certify that we have severally taken the oath into the hands of each other prescribed in the herein annexed commission, and we further certify that we have likewise administered the oath prescribed by the same herein annexed commission, *to Mr James M'Cann, the clerk we are going to employ for the execution of the same.*"

[Keene *vs.* Meade.]

The commission " required the commissioners, or a majority of them, to cause to come before them all such evidences as shall be named or produced to them by either the plaintiff or defendant; and to examine them on oath touching their knowledge or remembrance of any thing relating to the cause." The record does not show that any interrogatories were annexed to the commission.

The commissioners also certify as to the execution of the commission in the following words. " We the undersigned do certify that, in compliance with our duty, we shall examine the witnesses upon the following interrogatories, which we deem necessary first to establish."

Interrogatories returned with the commission, were then administered to the witnesses, and the separate answers to each written and returned.

Frederick Rudolph, who was the clerk and book keeper of Mr Meade, testified as to one of the items of the account, " that on the defendant's receiving two hundred and fifty dollars, the defendant himself made the entry thereof in the rough cash book, writing his name at full length, probably at my own request, not so much for the sake of the receipt, as in order for me to become acquainted with his signature, and the way of spelling his name."

On the trial of the cause, the counsel for the defendant objected to the reading of the commission on the ground of a variance in the name of the plaintiff in the commission; the plaintiff being called Richard *M.* Meade, instead of Richard *W.* Meade. This objection was overruled by the court; the defendant's counsel also objected to the deposition of F. Rudolph, so far as the same went to prove the item of $250 in the plaintiff's account; alleging as the ground of the objection, that as there was a written acknowledgement made by the defendant, the writing should be produced, and the same could not be proved by parol. The plaintiff by his counsel offered to withdraw, and stated that he withdrew and waived that part of the deposition which went to prove the existence of a written acknowledgement or receipt, and he relied only on the proof of the actual payment of the amount

paid by the witness. The court overruled the objection and permitted the evidence to be read.

The defendant by his counsel also objected to the reading of the depositions returned with the commission, because the commissioners had not certified in whose hand writing the depositions were taken down, nor that they had appointed a clerk, nor administered the oath to their clerk, as required by the said commission; nor that the said witnesses were required to testify all their knowledge or remembrance of any thing that may relate to the said cause; nor that they were sworn so to do, but were examined on particular interrogatories propounded by the commissioners themselves. But the court overruled the objections, and permitted the depositions to be read in evidence to the jury, &c.

The defendant's counsel excepted to the opinion of the court, on the objections made to the evidence, and the court sealed a bill of exceptions: upon which the defendant prosecuted this writ of error.

Mr Key, for the plaintiff in error, contended, that as there was written evidence of the payment of the sum of $250, it should have been produced; and that in its absence, no allegation of its loss having been made, parol proof of its contents could not be given. The entry in the book was the original and superior evidence.

The offer of the plaintiff's counsel to strike out that part of the deposition of Rudolph which referred to the written entry, did not prevent the influence of the fact that such evidence existed, nor deprive the defendant of his right to its production.

As to the misnomer of the plaintiff, he argued that the commission was an ex parte proceeding, and a strict scrutiny of it is warranted and demandable. The misnomer shows a different plaintiff from the real plaintiff in the cause.

He objected to the execution of the commission, as it did not appear that the interrogatories were those of the parties to the cause, but had been framed and put by the commissioners, without notice of the same. Nor did it appear that

the clerk, who was sworn, wrote down the examinations of the witnesses; the certificate stating only that the clerk was sworn, whom the commissioners "were about to employ." The clerk does not attest the depositions.

. He also contended that the other matters stated in the court below were legal objections to the commission. Cited 5 Har. and John. 438.

Mr Lee and Mr Jones, for the defendant in error, maintained, that the objections made by the plaintiff in error were merely technical, and such as were exclusively in the power of the circuit court. This court has decided against such objections as ground of error. 7 Cranch, 208.

As to the variance, it was said it was immaterial; or if material, should have been the subject of a plea; and if it had been pleaded, the plaintiff could have cured the defect by an averment that the person named in the commission and the plaintiff were the same. Cited 5 Bac. Ab. 215. 1 Wash. Rep. 257. 1 T. R. 235.

The evidence of Rudolph was not to prove the contents of the memorandum, but the advance of the money by the witness as the plaintiff's agent. The entry in the book was but secondary evidence of the payment; and to claim that the whole of the account book should have been annexed to the commission was unrea nable; and yet it must have been so annexed, if the position of the plaintiff in error is correct.

It was also contended, that upon a fair construction of the certificate of the commissioners, the execution of the commission was legal and proper.

Mr Justice THOMPSON delivered the opinion of the Court.

This case comes up on a writ of error to the circuit court of the district of Columbia, and the questions for decision grow out of bills of exception taken at the trial, and relate to the admission of evidence offered on the part of the plaintiff, and objected to by the defendant.

The first objection was to the admission of the depositions taken under a commission issued under a rule or order of the court below, on the ground of a variance in the name of

the testator Meade, as set out in the commission, from that stated in the title of the cause. The commission purports to be in a cause between Richard *M.* Meade plaintiff, and Richard R. Keene defendant, whereas the name of the plaintiff is Richard *W.* Meade. The whole variance therefore consists in the use of *M* instead of *W*, the middle letter in the plaintiff's name. This objection, we think, was properly overruled. It was a mere clerical mistake in making out the commission. The rule or order of the court for the commission was in the right name, Richard W. Meade; and the oath taken by the commissioners, and administered to the clerk and the witnesses, who were examined, and all the proceedings under the commission were in the cause according to its right title. It was a mistake of the officer of the court, which the court on motion might have corrected on the return of the commission. It may be regarded as mere matter of form, and which has not in any manner misled the parties. And indeed it may well be questioned whether the defendant was at liberty to raise this objection. It has been urged at the bar, that this was an ex parte commission, taken out by the plaintiff, and that the defendant has therefore waived nothing. But the record now before this court warrants no such conclusion. The mode and manner of taking out the commission is governed and regulated by the practice of the court below, and of which this court cannot judge. From the commission itself, and the interrogatories upon which the witnesses were examined, it would appear to have been a joint commission. The commissioners are required to examine all witnesses named or produced to them, either by the *plaintiff* or the *defendant.* And one of the interrogatories put to the witnesses was, do you know of any sum or sums of money paid by the *defendant* to the plaintiff, in money, bills, or merchandizes, which are not credited in the amount now before you. It can hardly be presumed, that such an interrogatory would have been put by the plaintiff. It was to elicit matter of defence, and which concerned the defendant only. The motion for the commission having been made by the plaintiff, would not preclude the defendant from after-

[Keene *vs.* Meade.]

wards joining in it with the consent of the plaintiff. And if it is to be viewed as a joint commission, the alleged mistake may be considered as made by both parties, and not to be taken advantage of by either; and besides, it may well be questioned whether the middle letter formed any part of the christian name of Meade. It is said the law knows only of one christian name. And there are adjudged cases strongly countenancing, if not fully establishing, that the entire omission of a middle letter is not a misnomer or variance (Lit. 3, a. 1 Lord Ray. 563. 5 Johns. 84. 4 Johns. 119, note *a.*); and if so, the middle letter is immaterial, and a wrong letter may be stricken out or disregarded.

The general objection to the testimony taken under the commission on account of the alleged variance having been overruled, the plaintiff's counsel read the deposition of F. Rudolph, which, in that part which went to prove the first item of $250 in the plaintiff's account, states that the defendant made the entry on the plaintiff's rough cash book, himself; writing his name at full length, at his request, not so much for the sake of the receipt, as in order for him to become acquainted with his signature, and the way of spelling his name. The witness fully proved the actual payment of the money. But the defendant objected to such parol proof, as written evidence of the payment existed and should be produced. This objection we think not well founded. The entry of the advance made by the defendant himself, under the circumstances stated, cannot be considered better evidence, within the sense and meaning of the rule on that subject, than proof of the actual payment. The entry in the cash book did not change the nature of the contract arising from the loan, or operate as an extinguishment of it, as a bond or other sealed instrument would have done. If the original entry had been produced, the hand writing of the defendant must have been proved, a much more uncertain inquiry than the fact of actual payment. It cannot be laid down as a universal rule, that where written evidence of a fact exists, all parol evidence of the same fact must be excluded. Suppose the defendant had written a letter to the plaintiff acknowledging the receipt of the

money, it certainly could not be pretended that the production of this letter would be indispensable, and exclude all parol evidence of the advance. And yet it would be written evidence. The entry made by the defendant in the cash book was not intended, or understood to be a receipt for the money, but made for a different purpose; and even if a promissory note had been given as written evidence of the loan, the action might have been brought for money lent, and this proved by parol. The note must have been produced on the trial; not however as the only competent evidence of the loan, but to be cancelled, so as to prevent its being put into circulation; a reason which does not in any manner apply to the present case. This objection has been argued at the bar, as if the court permitted the plaintiff to withdraw or expunge that part of the deposition which related to the written acknowledgement, in order to let in the parol evidence. But this view of it is not warranted by the bill of exceptions. This was offered to be done by the plaintiff's counsel, but no such permission was given by the court. The parol evidence was deemed admissible, notwithstanding the written entry of the advance. The parol evidence did not in any manner vary or contradict the written entry, and no objection could be made to it on that ground. Nor does the non-production of the written entry afford any inference, that, if produced, it would have operated to the prejudice of the plaintiff. Nor can it in any manner injure the defendant. The production of the written entry in evidence would not protect the defendant from another action for the same cause, as seemed to be supposed on the argument. The charge would not be cancelled on the book, but remains the same as before trial; and the defendant's protection against another action depends on entirely different grounds.

By the second bill of exceptions, several objections appear to have been taken to the reading of the depositions. These relate principally to the proceedings before the commissioners.

1. It is objected, that the commissioners have not certified in whose hand writing the depositions were taken down.

[Keene *vs.* Meade.]

We are not aware of any practice in the execution, and return of a commission, requiring such a certificate. And all that the commission requires is, that the commissioners, having reduced the depositions taken by them to writing, should send the same, with the commission, under their hands and seals, to the judges of the circuit court. But it is immaterial in whose hand writing the depositions are ; and it cannot be required that they should certify any immaterial fact.

2. The second exception is, that the commissioners have not certified that they had appointed a clerk, and administered to him the oath required by the commission.

This exception does not appear to be sustained in point of fact.

The commission directs the commissioners to administer the annexed oath to the person whom they shall appoint as clerk. And they certify that they had administered the oath annexed to the commission to James M'Cann, the clerk they were going to employ for the execution of the same. This certificate admits of no other reasonable interpretation, than that the person named was the one appointed by them as clerk, and it states in terms, that the prescribed oath was administered to him. The inference from the certificate is irresistible that the person employed as the clerk was the one to whom the oath was administered. And this is all the commission required. If employed as clerk, it follows of course that he must have been appointed as such. If objections like this are to set aside testimony taken under a commission, but very few returns will stand the test.

3. The third exception is that the witnesses were not required to testify all their knowledge and remembrance of any thing that related to the said cause.

The commission does not prescribe the form of oath, but directs generally, that the witnesses produced should be examined upon their corporal oaths, to be administered by the commissioners, touching their knowledge or remembrance of any thing that may relate to the cause aforesaid.

The commissioners do not certify what oath was adminis-

tered to the witnesses. But by way of caption to the inter-
rogatories, state, that in compliance with our duty, we shall
examine the witnesses upon the following interrogatories,
which we deem necessary first to establish. This form of
expression may not be very accurate or intelligible. It may
probably arise from what is required of the commissioners
by their own oath, which is to examine the witnesses upon
the interrogatories *now*, or which may hereafter, before the
said commission is closed, be produced to, and left with the
commissioners, by either of the said parties. The interroga-
tories which followed this caption, were probably those which
the commissioners had before them when the examination
commenced; and if so, it was proper for them first to exa-
mine the witnesses upon those interrogatories, leaving the
examination open to such other interrogatories as might be
submitted to them before the commission closed. But what-
ever might be the reason for this particular form of expression,
it is not perceived that it warrants any conclusion, that a
proper oath was not administered to the witnesses. It cannot
be presumed that these interrogatories were framed by the
commissioners. It would be against the usual course of tak-
ing testimony on a commission; and, in the absence of any
evidence to the contrary, we must assume that these inter-
rogatories were framed by the parties in the ordinary course
of such proceedings. And if this was a joint commission, as
there is reasonable grounds to conclude it was, the interro-
gatories put to the witnesses did require them to testify as
to all their knowledge of any thing that related to the cause,
or at all events to whatever the parties supposed related to
it. And the commissioners expressly certify in their re-
turn, that the witnesses produced and examined were sworn.
The form of the oath administered to the witnesses is not
set out in the return, nor is it necessary that it should be;
and there is nothing from which the court can infer that the
proper oath was not administered.

There is therefore no well-founded objection taken to the
execution of this commission, and the depositions were pro-

[Keene *vs.* Meade.]

perly admitted in evidence. The judgment of the court below is accordingly affirmed.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel: on consideration whereof, it is considered, ordered, and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.